# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6311 | **DATE** | 1/23/2003 |
| **CASE TITLE** | USA, ex rel. KAREN CERICOLA vs. BEN FRANKLIN BANK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 3/27/03 at 9:00 a.m. Enter Memorandum Opinion And Order. Defendants' motion to dismiss is denied. Defendants' motion for a more definite statement as to count III is granted. Plaintiff's answer to a more definite statement as to count III to be filed by 2/13/03. Defendants reply to be filed by 3/6/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 27 2003 | |
| | Notified counsel by telephone. | | date docketed | 74 |
| ✓ | Docketing to mail notices. | | HB docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| LG | courtroom deputy's initials | 03 JAN 24 PM 6:02 Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
JAN 2 7 2003

UNITED STATES OF AMERICA, *ex rel.*, )
KAREN CERICOLA, )
)
Plaintiff, )
)
v. ) No. 99 C 6311
)
BEN FRANKLIN BANK, ROBERT E. DECELLES, ) Judge John W. Darrah
ESTATE OF JOSEPH J. GASIOR, CHARLES E. )
SCHUETZ, JOSEPH A. NOWICKI, THOMAS J. )
NOWICKI, DR. EDWARD J. LUZWICK, and )
BERNADINE DZIEDZIC, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karen Cericola ("Cericola"), filed this action on behalf of herself and the United States under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b). Plaintiff's Third Amended Complaint alleges violations of the False Claims Act ("FCA)", 31 U.S.C. § 3729(a)(1), (2) and § 3730 (h) (Counts I and II); violation of the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1831( (Count III); and intentional infliction of emotional distress ("IIED") (Count IV). Presently pending before the Court is Defendants' Motion to Dismiss.

A reading of the Third Amended Complaint supports the following summary of the alleged conduct of the parties as to its claims.

Cericola, a realtor, is a Senior Vice President and seventeen-year employee of Ben Franklin Bank ("Bank"). As an insider at the Bank, Cericola obtained information and documentation that form the basis of the instant suit.

74

Robert E. DeCelles ("DeCelles") is a member of the Bank's Board of Directors, serving as President and Chief Executive Officer from August 1998 through May 2002. Joseph J. Gasior ("Gasior") is the former Chairman of the Board and Vice President of the Bank, serving in that capacity from 1995 until the Fall of 2001. In March of 2002, Gasior passed away.

Charles E. Schuetz ("Schuetz") is a former member of the Board of the Bank, serving in that capacity until the Fall of 2001.

Joseph A. Nowicki ("Joseph") is a former member of the Board of the Bank, serving in that capacity at all relevant times until the Summer of 1999. Joseph is the father of Thomas J. Nowicki ("Thomas"), and replaced his father as a member of the Board of the Bank and has served in that capacity since his father's retirement.

Edward Luzwick ("Luzwick") is a former member of the Board of the Bank, serving in that capacity at all relevant times until the Fall of 2001. He also served as Vice President during this time. Bernadine Dziedzic ("Dziedzic") was a member of the Board of the Bank. She was also given the title of Bank Assistant Vice President and a position in the Bank's accounting department.

The suit is based on a portfolio of 424 low-grade mortgage loan investments, called Title I loans, that the individual Defendants caused the Bank to purchase shortly before attempting to take the Bank public in late 1990. Availing themselves to loose and discredited accounting practices, these principals intended to use the low-grade loan portfolio to inflate the Bank's reported earnings by recognizing in the year of the initial public offering ("IPO") all of the revenue that the Bank could expect to receive for servicing these loans over an expected six-year life. In fact, these loans were highly risky and improperly underwritten; and it was unreasonable

2

to believe that they would reach this expected life without defaulting.

Cericola brought to light the faults in these loans and forced the Bank to call off the IPO, costing the insiders substantial earnings they theoretically would have made on their stock. Within a short time of calling off the IPO, the Bank began experiencing crippling numbers of defaults over these loans. Faced with the potential failure of the Bank, the individual Defendants turned to fraud to try to unload these loans onto taxpayers through a scheme of false claims for federal mortgage insurance payments under the Housing and Urban Development ("HUD") Title I loan insurance program.

When Cericola began reviewing the Bank's Title I loan portfolio, she discovered numerous instances of improper underwriting. As a result, the Bank retained an outside consultant to review the loans and to opine whether the loans qualified for Title I insurance. The Bank principals chose Robert Coyle ("Coyle") and The Coyle Group believing that Coyle was "industry friendly" as the firm markets itself by encouraging leading institutions to enter the Title I market with promotions about the profitability of Title I lending and then selling consulting services on obtaining HUD approval and on various aspects of regulatory compliance. Coyle agreed not to relate the conditions of the Bank's Title I loan portfolio to anyone except the principals at the Bank.

The Coyle report stated that a large number of the loans did not qualify for Title I insurance. Coyle sampled for review 104 of the 424 Title I loans in the Bank's portfolio. Coyle opined that 48 of the 104 loans did not comply with HUD underwriting requirements and, thus, were not eligible for Title I insurance. Coyle completed his report in July 1999, and all of the individual Defendants were informed of his findings at that time.

In late 1999, after both Cericola's and Coyle's reviews, Defendants began submitting claims to HUD for insurance on loans that it knew were uninsurable. The Bank submitted 81 of the 424 loans to HUD for insurance payments. These loans violated HUD underwriting requirements, and the Bank knew such through Cericola and Coyle. The Defendants wilfully ignored or recklessly failed to learn that the loans were ineligible for insurance at the time they were submitted. HUD identified 50 of the 81 claims and refused to make payment on the basis that the loans were ineligible. HUD paid $715,694.45 on the remaining thirty-one loans.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff generally need not plead facts or the elements of a claim. Instead, a plaintiff need only plead the bare minimum facts necessary to put a defendant on notice of the claim so that the defendant can file an answer. *See Swierkiewicz v. Sorema*, 524 U.S. 506, 512 (2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

However, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to survive dismissal, the plaintiff must plead the who, what, when, and where of the alleged fraud. *See Lachmund v. ADM Investor Serv., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (quotations omitted). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172

F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

Defendants first argue that Plaintiff fails to sufficiently plead Count I, her FCA claim. Plaintiff concedes that she has not sufficiently pled an FCA claim under 31 U.S.C. § 3729(a)(2) and withdraws this claim.

An individual violates Section 3729(a)(1) of the FCA if he or she "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval...." 31 U.S.C. § 3729(a)(1).

In the instant case, Plaintiff alleges that the Bank, through the individual Defendants' actions as officers of the Bank, caused the Bank's subservicer to submit false insurance claims for 81 loans to HUD. Furthermore, the Defendants knew that these claims were false because they had information indicating such from Cericola and Coyle. Exhibits attached to the Third Amended Complaint identify each of the 81 rejected claims and set forth the reasons why each of these claims were false through the identification of the underwriting deficiencies in each loan. These allegations are sufficient to satisfy the who, what, where, when, and how. *See United States v. Rogan*, 2002 WL 31433390 (N.D. Ill. Oct. 31, 2002) (plaintiff sufficiently pled FCA claim stating a general outline of the alleged fraud).

As to Defendants' contention that the amended complaint fails to adequately inform the Defendants of their role in the alleged fraud, "[i]n cases of corporate fraud where the false or

F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

Defendants first argue that Plaintiff fails to sufficiently plead Count I, her FCA claim. Plaintiff concedes that she has not sufficiently pled an FCA claim under 31 U.S.C. § 3729(a)(2) and withdraws this claim.

An individual violates Section 3729(a)(1) of the FCA if he or she "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval...." 31 U.S.C. § 3729(a)(1).

In the instant case, Plaintiff alleges that the Bank, through the individual Defendants' actions as officers of the Bank, caused the Bank's subservicer to submit false insurance claims for 81 loans to HUD. Furthermore, the Defendants knew that these claims were false because they had information indicating such from Cericola and Coyle. Exhibits attached to the Third Amended Complaint identify each of the 81 rejected claims and set forth the reasons why each of these claims were false through the identification of the underwriting deficiencies in each loan. These allegations are sufficient to satisfy the who, what, where, when, and how. *See United States v. Rogan*, 2002 WL 31433390 (N.D. Ill. Oct. 31, 2002) (plaintiff sufficiently pled FCA claim stating a general outline of the alleged fraud).

As to Defendants' contention that the amended complaint fails to adequately inform the Defendants of their role in the alleged fraud, "[i]n cases of corporate fraud where the false or

misleading information is conveyed in ... 'group published information,' it is reasonable to presume that these are the collective actions of the officers." *Morse v. Abbott Labs.*, 756 F. Supp. 1108, 1111 (N.D. Ill. 1991). Here, the Third Amended Complaint alleges that the Board caused the false insurance claims to be filed with HUD. Therefore, it is reasonable to presume that the allegedly false insurance claims were the collective actions of the officers of the Bank. Accordingly, the allegations adequately inform the Defendants of their role in the alleged fraud. *See United States v. Rogan*, 2002 WL 31433390 (N.D. Ill. Oct. 31, 2002).

Defendants also argue that Count I should be dismissed because the Plaintiff has failed to allege materiality.

Plaintiff has alleged that the deficiencies in the loans rendered the loans ineligible for Title I insurance. Plaintiff further alleges that HUD denied almost half of the submitted claims because of deficiencies known by the Defendants. Accordingly, materiality is sufficiently pled.

Lastly, as to Count I, Defendants argue that they are protected by HUD regulations; therefore, Count I should be dismissed.

HUD regulation provides, in pertinent part:

> Discovery of misstatements of fact. If, after a loan has been made, the lender discovers any material misstatement of fact or that the loan proceeds have been misused by the borrower, dealer or any other party, it shall promptly report this to the Secretary. In such a case, the insurance of the loan shall not be affected unless such material misstatement of fact or misuse of loan proceeds was caused by or was knowingly sanctioned by the lender or its employees ... provides that the validity of any lien on the property has not been impaired.

24 C.F.R. § 201.40(a).

Defendants' reliance on this "safe harbor" provision is meritless. First, Plaintiff does not

allege that the underwriting deficiencies in the eighty-one loans were due to misstatements of fact or the misuse of loan proceeds. Instead, she alleges underwriting deficiencies on the face of the loan which rendered the loans ineligible for Title I insurance. Furthermore, there is no allegation that the Defendants' promptly reported the deficiencies to the Secretary. Instead, it is alleged that the Defendants filed claims for the ineligible loans, knowing that the loans were ineligible.

Defendants next argue that Count II, FCA retaliation, should be dismissed because Plaintiff has failed to adequately plead an FCA claim. As found above, Plaintiff has sufficiently pled an FCA claim. Accordingly, Defendants' Motion to Dismiss Count II is denied.

Defendants argue that Count III, retaliation in violation of FIRREA, should be dismissed because Plaintiff has failed to allege who at the Bank discriminated against Cericola and when the alleged discrimination took place. In the alternative, Defendants seek a more definite statement addressing these issues.

Defendants do not contest that Plaintiff has pled that she provided information to a federal banking agency or the United States Attorney General regarding a possible violation of a law or regulation; that she suffered an adverse action by her employer; and that there was a causal link between the protected expression and the adverse action. *See* 12 U.S.C. § 1831j. Plaintiff has sufficiently pled a cause of action under 12 U.S.C. § 1981j. However, to allow Defendants to properly respond to the allegations in Count III, Plaintiff must inform Defendants of who discriminated against her and when the alleged discrimination took place. Accordingly, Defendants' Motion for a More Definite Statement as to Count III is granted.

Lastly, Defendants seek dismissal of Count IV, Plaintiff's IIED claim, arguing that Plaintiff has failed to state a cause of action.

Under Illinois law, the elements of a claim for intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did in fact cause severe emotional distress. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993), quoting *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1998).

Cericola alleges that the Defendants' retaliated against her "in an extreme and outrageous fashion, violating all standards of decency and for the purpose of punishing her and obstructing justice." As a result of this conduct, she has undergone extreme emotional distress as well as physical pain and suffering.

Under the 12(b)(6) standard discussed above, dismissal of the complaint for failure to state a claim is proper only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In her Third Amended Complaint, Cericola's allegations, if proven, could support an IIED claim. *See Johnson v. Federal Reserve Bank of Chicago*, 199 Ill. App. 3d 427, 431-32 (1990). Accordingly, at this stage of the litigation, the Motion to Dismiss Count IV is denied.

For the reasons stated above, Defendants' Motion to Dismiss is denied. Defendants' Motion for a More Definite Statement as to Count III is granted.

Dated: January 23, 2003

JOHN W. DARRAH
United States District Judge