# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6311 | **DATE** | 6/19/2003 |
| **CASE TITLE** | USA, ex rel., KAREN CERICOLA vs. BEN FRANKLIN BANK | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion to disqualify is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 23 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 167 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, KAREN CERICOLA, <br><br> Plaintiff, <br><br> v. <br><br> BEN FRANKLIN BANK, ROBERT E. DECELLES, ESTATE OF JOSEPH J. GASIOR, CHARLES E. SCHUETZ, JOSEPH A. NOWICKI, THOMAS J. NOWICKI, DR. EDWARD J. LUZWICK, and BERNADINE DZIEDZIC, <br><br> Defendants. | No. 99 C 6311 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, United States of America *ex rel.* Karen Cericola ("Relator"), filed this action on behalf of herself and the United States under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b). Relator's Third Amended Complaint alleges violations of the False Claims Act ("FCA)", 31 U.S.C. § 3729(a)(1), (2) and § 3730 (h); violation of the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1831; and intentional infliction of emotional distress. Presently pending before the Court is Relator's Motion to Disqualify the law firm of Ross & Hardies and its attorneys (collectively "RH Counsel").

The following is a brief summary of the alleged conduct from the Third Amended Complaint for consideration in addressing the Plaintiff's Motion to Disqualify.

The suit is based on a portfolio of 424 low-grade mortgage loan investments, called Title I loans, were purchased by the Ben Franklin Bank ("the Bank") Bank shortly before attempting to

take the Bank public in late 1990. The Bank principals intended to use the low-grade loan portfolio to inflate the Bank's reported earnings by recognizing in the year of the initial public offering ("IPO") all of the revenue that the Bank could expect to receive for servicing these loans over an expected six-year life. In fact, these loans were highly risky and improperly underwritten.

Cericola brought to light the faults in these loans, and the Bank called off the IPO. Within a short time of calling off the IPO, the Bank began experiencing a number of defaults over these loans. The individual Defendants turned to fraud to try to unload these loans onto taxpayers through a scheme of false claims for federal mortgage insurance payments under the Housing and Urban Development ("HUD") Title I loan insurance program.

When Cericola began reviewing the Bank's Title I loan portfolio, she discovered numerous instances of improper underwriting. As a result, the Bank retained an outside consultant to review the loans and to opine whether the loans qualified for Title I insurance. The consultant agreed not to relate the conditions of the Bank's Title I loan portfolio to anyone except the principals at the Bank. The consultant's report stated that a large number of the loans did not qualify for Title I insurance.

In late 1999, after both Cericola's and the consultant's reviews, Defendants began submitting claims to HUD for insurance on loans that it knew were uninsurable. The Bank submitted 81 of the 424 loans to HUD for insurance payments. These loans violated HUD underwriting requirements, and the Bank knew such. HUD paid $715,694.45 on thirty-one loans.

The Defendants have filed an answer, which denies all of the material allegations of

wrongdoing, and have pled several affirmative defenses.

Specifically, the Defendants deny that the loans were ineligible and/or that they knew of the ineligibility when they submitted the insurance claims to HUD. They assert as a defense that they relied upon the advice of counsel when submitting the Title 1 loan insurance claims. Defendants also assert a mistake of law affirmative defense, *i.e.*, that they lacked scienter because they misinterpreted the law governing the eligibility of the claims.

Relator has moved for disqualification of RH Counsel pursuant to Local Rule 83.50.1 *et seq.*

A party is entitled to a degree of deference in the prerogative to proceed with counsel of its choice. *See Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (*Owen*). Disqualification of a party's chosen attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (*Freeman*). Because motions to disqualify maybe used as a means of harassment, the Court reviews such motions with extreme caution. *See Freeman*, 689 F.2d at 722. Accordingly, the moving party bears the burden of establishing that disqualification is appropriate. *See Starling v. Cronin*, 2002 WL 23896 (N.D. Ill. Jan. 7, 2002) (*Starling*).

Relator first contends that RH Counsel, specifically Steven Smith ("Smith") of Ross & Hardies, should be disqualified because Smith is a primary witness against his own client. Relator asserts that, before the Defendants resorted to submitting the ineligible federal insurance claims at issue in the instant case, the Bank first tried to rescind the purchase of many of the loans by bringing a breach of warranty suit against the mortgage companies that sold them to the Bank ("the Cerritos litigation"). The basis of the Bank's breach of warranty claim was that the

3

loans violated HUD/VA requirements and did not qualify for federal Title 1 insurance. RH Counsel represented the Bank and made these allegations on the Bank's behalf.

Relator argues that RH Counsel is a witness regarding Defendants' possible spoliation of evidence and perjury. Relator asserts that the Defendants' Board meeting minutes indicate that RH Counsel advised Defendants regarding the discoverability of documents in the context of the Cerritos litigation. Based on counsel's advice, the Defendants destroyed relevant documents. Relator provides excerpts from Board meeting minutes which demonstrate that Board members discussed destroying documents and planned on having a very poor memory during their depositions.

Relator also contends that Smith will need to testify at trial because the Bank has argued, in its response to the present motion, that the HUD investigator's, James Siwek's ("Siwek"), report concerning an investigation into several of the loans at issue in the instant case exonerates the present Defendants. Smith was intricately involved in the report because Smith authored the suspicious activity report that triggered Siwek's investigation and Smith provided Siwek with selected and altered documents and gave two interviews to Siwek.

Local Rule 83.53.7 provides, in pertinent part:

> If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

L.R. 83.53.7(b). The moving party bears the burden of establishing that the attorney's testimony is admissible and necessary. *See Starling*, 2002 WL 23896 at * 2; *Isaacson v. Keck, Mahin & Cate*, 1992 WL 297391 (N.D. Ill. Oct. 8, 1992) (*Isaacson*); *Thomas Steel Corp. v. Ameri-Forge*

4

*Corp.*, 1991 WL 280086 (N.D. Ill. Dec. 27, 1991). As to the necessity of the counsel's testimony, an attorney who participates in a case should not be called as a witness absent extraordinary circumstances or compelling reasons and where the evidence is not easily available from other sources. *See United States v. Dack*, 747 F.2d 1172, 1176 n. 5 (7th Cir. 1984); *Isaacson*, 1992 WL 297391 at * 2.

Regarding the claim that Smith will be required to testify against his client because of his involvement in the Cerritos litigation, Smith's testimony is not required. Relator can obtain testimony concerning the Defendants' awareness of the allegations of the Cerritos litigation from the Defendants themselves as well as from herself as she was involved in the Cerritos litigation. She can also introduce the Cerritos complaint into evidence.

In addition, Relator's allegations of *possible* spoliation of evidence and perjury fail to support disqualifying Smith because Relator only speculates, at this poin, that evidence was destroyed and that the Defendants did or will commit perjury. Such speculation is insufficient to justify disqualification.

Relator also contends that Smith's testimony is relevant and necessary to address the Defendants' advice of counsel defense. Relator concedes that the Defendants relied upon a different attorney's advice from a different law firm in their advice of counsel defense. However, Relator asserts that Smith's testimony is required because the trier of fact may consider that Smith gave the Defendants different advice when making the determination of the reasonableness under the circumstances of the Defendants' reliance on the other attorney's advice. However, Relator's assertion that Smith gave contradictory testimony is mere speculation. It is the advice of counsel relied upon by the Defendants that is relevant and

admissible, not speculation of what Smith may have said to such counsel. Furthermore, Relator can obtain such evidence from the Defendants themselves. Accordingly, Relator has not demonstrated that Smith's testimony is necessary or that extraordinary circumstances exist to compel such testimony.

Furthermore, Smith need not testify as to the Siwek investigation and report. The report can be admitted into evidence, and Siwek can testify about the investigation and the report.

Based on the above, Relator has not demonstrated that Smith's testimony is necessary or that extraordinary circumstances or compelling reasons exist to justify such testimony.

Relator also seeks disqualification based on alleged conflicts of interest. Relator contends that a conflict of interest exists between Smith and his clients because Smith promised to keep information he received at a meeting with Relator and Federal Bureau of Investigator Dave Crawford ("Crawford") confidential. At the meeting, Relator discussed the loans at issue in the present lawsuit and the harassment she believed she was being subjected to that constituted a different lawsuit. Relator and Crawford concede that Smith informed Relator and Crawford that he represented the Bank and that he did not represent Relator. Smith and Crawford aver that Smith promised to keep everything that was discussed at the meeting confidential. Smith does not *recall* promising confidentiality.

Local Rule 83.51.7 provides, in pertinent part, that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person.... L.R. 83.51.7(b).

Here, Relator has demonstrated that Smith promised to keep the information he received at the meeting between Relator and Crawford confidential. However, she has failed to

6

demonstrate that the representation of the Defendants will be materially limited by Smith's responsibilities to Relator. Relator concedes that she worked extensively with Smith concerning the ineligible loans, including providing Smith extensive documentation, reports and updates. Relator does not identify anything that Smith already did not know that he must keep confidential from his clients. While Relator also asserts that the discussions concerning her alleged harassment should be kept confidential based on Smith's promise of confidentiality, Relator has failed to demonstrate that Smith's responsibility to keep any information about the alleged harassment would materially limit Smith's ability to represent the Defendants in the instant case. Accordingly, disqualification on this ground is not proper.

Relator also contends that a conflict of interest exists because Smith offered Relator legal advice regarding possible defamation liability for attempting to blow the whistle about the ineligible loans. Relator asserts that Smith convinced her to stop blowing the whistle on the ineligible loans and to collect a report that she had written for the Board members, warning her that the report could subject her to defamation liability.

An attorney-client relationship is created where legal advice of any kind is sought from an attorney in his capacity as such. *See United States v. Keplinger*, 776 F.2d 678, 700 (7th Cir. 1985) (*Keplinger*). The potential client must manifest an intention to seek legal advice. Furthermore, an attorney-client relationship cannot be inferred absent some finding that the potential client's subjective belief is minimally reasonable. *Keplinger*, 776 F.2d at 701.

In the instant case, at the time that Relator and Smith had discussions concerning her report and the possible defamatory statements, Relator knew, at all times, that Smith was acting as the Bank's attorney and had extensively worked with Smith in that position. Relator provides

no evidence demonstrating that she manifested an intent to seek legal advice from Smith for her own benefit or that any such subjective belief was minimally reasonable in light of the knowledge Relator had of Smith and the Bank's attorney-client relationship. It is noteworthy that Relator admits that she was "uncomfortable" with Smith's presence in the room during a meeting because she did not trust Smith. Accordingly, disqualification for this additional reason is not warranted.

Lastly, Relator seeks not only disqualification of Smith but also Smith's firm.

As discussed above, Relator has not demonstrated that Smith should be disqualified. Accordingly, Smith's firm is not disqualified.

For the reasons stated above, Plaintiff's Motion to Disqualify is denied.

Dated: June 19, 2003

JOHN W. DARRAH
United States District Judge